Good morning, Your Honors. Mark Alpert for Appellant, El Dorado Estates. I'll be relatively brief. You have my reply brief. I had the opportunity to go last, so I'll just reserve the rest of my time for rebuttal. I look at this case. I see a situation where there are allegations in the complaint that say, in effect, a party seeking to subdivide their home, if only they give up the right, if only they give up the right to make housing available for families. Is that any more than a theoretical possibility? Is there any commitment so that to get the subdivision, they will, in fact, lift the age restriction and make housing available to families? The complaint simply speaks of potential. I'm not sure I understand the question, Your Honor. You get your subdivision. Is there any guarantee that families are going to be allowed to live there? Well, the point is... The answer is not yes, is it? Because the complaint just says there's a potential. And isn't that why the district court said you don't have standing? No, the point is, Your Honor, if somebody says you can have your subdivision if you accept as a condition of that subdivision, a condition of that subdivision that it cannot, you cannot convert this park to a family park, that's discrimination. There's nothing hypothetical about that. Well, is that a... That's a California state law question, isn't it? The land use laws in California are quite complex, and there are any number of possibilities of what the county planning people can do to you if you want to do something with your own property. But what is the federal question here? You bring a case under the Fair Housing Act. How was he injured under the Fair Housing Act? Well, the injury that occurred... Well, first of all, I want to say you're right. There is a complex maze of state law issues that involve processing a subdivision application, whether it be CEQA, the Subdivision Land Act. But that does not exempt a local government from using CEQA or using the Subdivision Act, MAP Act, as a tool of discrimination. So even if, just because CEQA is involved in a case... But how is he injured? How is the owner of this property injured by the possibilities that the land use people are going to make him jump through a lot of hoops that are going to cost him a lot of money and a lot of difficulty other than living in a bureaucracy, a fate we all suffer, how is he injured by this particular conduct on the bottom of the county? Well, the point is that he's already been injured. At the time we filed the complaint, this applicant had been trying for two or three years to get a subdivision application approved. And the way a local government, if you're somewhat wise as a local government in attempting to figure out how to effectuate your discriminatory intent, you don't say, I'm just going to deny this subdivision application. You impose dozens of illegal conditions on that subdivision application. So your argument is there is injury for standing purposes because he's incurred expenses and the delay of moving forward with his subdivision no matter what purpose it was going to put to. That's right. And if you look at the case of Hayward, which is I think probably the most analogous case here, really the linchpin of the district court's conclusion is you don't have a case under the FHA unless you've denied the opportunity to provide housing for families. That's really the linchpin of the district court's conclusion. Well, in the Hayward case, the park owner was not denied the right to provide housing to the families. The park owner actually effectuated that right. And the city, in effect, retaliated by reducing rents under rent control using one of the mobile home parks in California as a way of, in effect, punishing this park owner for effectuating their right to provide housing to family. So in that case, you had an owner who actually effectuated its right. In this case, we have nothing like that. We have an owner who hasn't done anything to lift the age restriction, though he could have, and hasn't committed itself to doing that in the future, even if it gets to subdivision. How is the interest of the Federal Housing Act served whatsoever? Well, you do have a landowner who's alleged to have been told, you can have your district. You're missing my question. At the end of the day, if your client prevails in this lawsuit, how are the interests of the Federal Housing Act furthered whatsoever? There's no reason to think at the end of the day the age restriction is actually going to get lifted, because your client hasn't pledged to do that. Your client's complaint refers only to the potential for that. Your Honor, by, in effect, reserving the right to, at some later date, become an all-age park, I do believe, and by... They can do that right now. Right. But the point is, Your Honor, the city was, in effect, demanding that that right be given up as a condition of the Federal Housing Act. And at the end of the day, nobody's better off except your client. Your client's not better off because of the lifting the age restriction. It's better off because of the subdivision, which may permit it to make more money. But that doesn't what the Federal Housing Act is about, is it? Trying to make your client get more money so it can subdivide? The Federal Housing Act is about creating a remedy for discrimination that is motivated by an animus... Where's the discrimination here, if your client doesn't promise to lift the age restriction if it gets the subdivision? The discrimination is the denial of the subdivision based on a concern or a fear that the subdivision application will lead to the asset or the property becoming a family property. Just like... So you don't think it's necessary for your client to enter a binding commitment to actually lift the age restriction? No, I don't. I think... And let me... I get your position. Let me move to something else that troubles me about the client. Can I just... Sure. ...affirm that we're talking about standing here? Right. This is not the 12B6 motion, right? Well, in other words, the question is, we talked about injury in the context of standing. You've said that now. How do you have Article 3 standing beyond the injury? Well, the way you get standing is if you were injured by discriminatory behavior, right? Right. We have behavior here, a denial of the subdivision application or a delay of the subdivision application, an imposition of illegal conditions motivated by discriminatory animus. So it's traceable to the action of the city council? That's right. That prone? This is really the rare case, frankly. I'm almost surprised... And what would be the remedy you seek for that? Well, the remedy would be damages, for one. Thank you. And another remedy would, of course, be enjoining the city in some way from its actions as the application continues to be processed. Judge Fisher alluded to another argument. The city describes it as its alternative argument. And as I understand it, it's that because of the, what I'll call the senior housing exemption in the Federal Housing Act, the park as it's currently operated is not in violation of the Federal Housing Act. I take it that's your position as well, that it's not in violation. Is that correct? As of the time, yes. The park was operating as a senior park in compliance with the law. So the city argues that what it's doing here, or what it may be found to be doing here, is maintaining the park in a position that's lawful under the Federal Housing Act. How is it a violation of the Federal Housing Act to take steps to maintain it in a lawful condition? Well, the Federal law allows you to have senior housing. That exemption doesn't mandate that you maintain it as senior housing. I understand that. But you're complaining here there's discrimination under the Federal Housing Act because you're not allowed to convert to a different condition. But the current condition is perfectly lawful under the Federal Housing Act. So how is the Federal Housing Act concerned as to whether you're senior housing or not? Because in this case, the risk that we're talking about is, or the potential change we're talking about, is making housing available for families. Sure, but it's lawful this way. So how does the Federal Act care that you make it available for housing if it's currently lawful? I guess I would say if that were the correct logic, the Hayward case would have never been decided the way that it was. Because in the Hayward case, all the city was doing was taking steps to assure that a park owner would have the protected status as a senior, to maintain that senior status. But the bottom line is, the law allows a park to convert to family status. But the law doesn't require the park to convert to family status. That's true. But that doesn't change the fact that when local government steps in and tries to stop you from doing what is legal, and what you're trying to do, or potentially do, which is legal, is making housing available for families, that's discrimination covered by the Act. Okay. We've taken your time, so we'll still give you some time for rebuttal. Thank you. We'll hear from counsel for the city. Good morning, Your Honor. My name is Jeff Malabi, and I represent the city of Fillmore in this case. I came to represent the city of Fillmore after the briefs were filed, so I believe I was able to take a bird's-eye view of this case and simplify matters, and I think it actually is a very simple case. It is, if you look at it as a standing case. Yes. How do you win on that ground? Well, I think what you have, I think I'd just like to make a very obvious statement, and that is for there to be a Federal Housing Act case, there has to be a Federal Housing Act violation. Well, we're talking standing. Right. And so the injury that the plaintiff is asserting has to be the result of a violation of the Federal Housing Act. And what that requires, if you look at the case, my understanding from the reason I asked the question of counsel for Eldorado, he says the injury is the delay in the costs incurred in trying to comply with what the city council has required. He's alleged that they're using the requirements of the city in a way to deny the opportunity, A, to subdivide, which may involve converting from senior housing to family housing. So he traces it to a motivation. He cites Hayward. And the question of remedy, presumably, would be so far he's incurred damages in the cost of trying to comply. So why isn't that enough for Article 3 standing? Because there's no injury in this case due to the city's actions, because there is no intent on the part of the park owner to provide senior housing. There's no interference with any intent. The park owner has alleged no intent to provide senior housing, and so the city's alleged interference with some intent to prevent a recognizable injury. It's a Lujan issue. It's a Lujan issue where the plaintiff, as in Lujan, did not allege that they have an intent to ever visit the endangered species that were threatened in that case. They could not show standing in that case. Suppose the owner here pledged, committed to lift the age restriction if the subdivision were accomplished. Is that enough for standing? If he alleged that in his complaint and he had done that, I think that would be. Do you accept the possibility of future injury being enough for standing? Yes. But you have to allege some intent. You have to have the intent to do it in the future. And if you don't allege that intent, then it's impossible for the city to have interfered with it and to have injured you. I believe that's why the district court held there was no standing in this case. I'd like to distinguish the Hayward case, which the plaintiff states that they are in most part relying on, and that is because in the Hayward case, the court specifically held that there was an interference, the reduction in rents as retaliation for the change to a family park was interference under the Fair Housing Act with the park owner's intent and actual change to a family park, even though it occurred after the fact. It was still an interference. Here we have no interference with any intent to provide family housing because they have not alleged any intent. In fact, they've alleged that they thought about providing family housing and removing the age restriction, but then chose not to and chose to pursue a subdivision instead. They affirmatively pledged they do not have the intent to remove the age restriction. Mr. Albert brought up that... It happens if he prevails on getting a subdivision. In other words, that changes the status of the property. It doesn't foreclose it, turning it over to non-seniors. That's correct. The two events are entirely decoupled. There's no relationship between the subdivision and the removal of the age restriction. So if the park is subdivided, that has no effect on the age restriction. It could stay in place, or he could choose to remove it at any time. But they have not alleged that they plan to do that at any point. So it boils down to your premise that in order to trigger... Let's assume that the city council has imposed unreasonable restrictions, but he can't plead it in this case, he can't succeed in this case withstanding, unless he pleads that he himself intends to or might convert it to family housing. That is our position, yes. Sounds like 12B6, but okay. I would also like to address the housing for older persons amendment that Judge Clifton brought up. And I think just as the counsel for the plaintiff for the appellant admitted in his opening statement here today, that the park was operating in compliance with the housing for older persons exemption at the time the complaint was filed, I think that is a dispositive admission. And what that means is the city could not possibly have been discriminating in violation of the Fair Housing Act, because discrimination against older persons that complies with the housing for older persons exemption is by statute, by definition not discrimination under the Fair Housing Act. He pointed to the city of Hayward case. He did point to the city of Hayward case, and I'm glad you brought that up, because in the city of Hayward case the court specifically held the park was not in compliance with the housing for older persons exemption. Specifically held that. And so in this case he's admitted that they were in compliance, and that is dispositive. And the city could not possibly have been illegally discriminating in this case. And with that, that's all I have to say. Thank you, Your Honor. Thank you. We took your time, so we'll give you two minutes for rebuttal. We don't have an allegation that we were, the park owner here has basically stated that they'd be changing the park to all age. And I think the reason is clear under the circumstances why they wouldn't do that, because politically they know the consequences that would have had for their application. We do allege that the city demanded that the park owner give up the right to provide housing for families as a condition of their subdivision. It seems to me that's fairly dispositive of the issue. Well, at the end of the day, how are things going to be any better under the Federal Housing Act? They will be better because local governments will not No, no, no. This case, we're talking about standing. How will things be better for anybody? I mean, one of the requirements for the disparate treatment is that you have to show harm to members of a protected class. Now, that's not your client. So how is, has this caused harm to members of a protected class? How are those people going to have their interests served if you're successful in this lawsuit? Well, you'll have a property that is free to, you know, to become an all-age property. Well, okay, that's the theory, but if it's, if your client doesn't change it, in fact, nobody's interest, nobody in that protected class is benefited, are they? If the park owner had given in to essentially what was the blackmail of the city, we would have had an asset that was conditioned, the subdivision that was conditioned on not allowing families to move into this park. So how is that not the same kind of theoretical benefit that might be achieved in the future in the same way that somebody that might travel to go see some natural resource is theoretically benefited knowing the resource might be there if they go to look at it? It's not theoretical at all. Either you have a property that is capable of becoming a family property or a property that's not capable of becoming a family property. And I would submit to Your Honor if the facts were a little bit different in this case and there had been statements behind the scene that the property owner who was subdividing was looking to take advantage of certain low-income tax credits and that there was a concern among the residents in the park that this park owner would, if they subdivided, take advantage of a low-income tax credit. And all that connotes in terms of trying to keep out the wrong folks. That's the Blackjack case. This is no different than that case. Except at the end of the day, if your client isn't committed to providing low-income housing, then how are those people benefited in the slightest? They're being asked... Essentially, the Fair Housing Act is designed to prevent local governments from acting in a discriminatory fashion. This is discrimination that caused harm. The only harm I hear is harm from your client's pocket because it hasn't been able to subdivide. And then the real question is, Your Honor, under the Fair Housing Act, is the only time where you can have a cause of action where your injury is your inability to provide housing for families. And that argument was rejected. The argument was rejected in the Hayward case, and it's been rejected repeatedly. What we have here is a clear injury motivated, that was caused by a discriminatory animus. And if you do not step in and prevent local governments from doing it, they'll use complex land use laws like CEQA, the Subdivision Map Act, to cause the very kind of discrimination that they cannot otherwise effectuate directly. And if you look at the record... I think we have your argument. Thank you. We thank both counsel for your helpful argument in the complicated case. The case just argued is submitted.
judges: Goodwin, Fisher, Clifton